Jack Bertrand RICHARDSON, Jr.,
Petitioner-Appellant,

v.

T. W. MARKLEY, Warden, United States
Penitentiary, Terre Haute, Indiana,
Respondent-Appellee.

No. 14492.

United States Court of Appeals
Seventh Circuit.

Jan. 11, 1965.

William T. Fitzgerald, Evansville, Ind., for appellant.

Richard P. Stein, U. S. Atty., Robert W. Geddes, Indianapolis, Ind., for appellee.

Before DUFFY and KNOCH, Circuit Judges, and MAJOR, Senior Circuit Judge.

DUFFY, Circuit Judge.

The petitioner who is confined in the United States penitentiary at Terre Haute, Indiana, petitioned the United States District Court for the Southern District of Indiana for a writ of habeas corpus. Petitioner claims that proceedings which resulted in the revocation of his parole were invalid in that a preliminary interview with the parolee was not held within a reasonable time after the issuance of the warrant and the retaking of the prisoner, as required by law. The District Court, without hearing evidence, denied the petitioner's application for a writ of habeas corpus. Petitioner appealed to this Court in forma pauperis. We appointed counsel to represent him on this appeal.

On October 28, 1959, petitioner was sentenced in a United States District Court in California upon charges of interstate transportation of a stolen motor

vehicle, and the interstate transportation of fraudulent checks. He received sentences of three years and six years respectively, the sentences to run consecutively. On September 17, 1962, the petitioner was released on parole.

On April 1, 1963, a parole executive recommended that a violator's warrant be issued for petitioner's arrest based upon the alleged fact that petitioner had been arrested in Illinois for possessing a stolen motor vehicle, and that petitioner had signed a statement admitting the theft.

On May 3, 1963, a supplemental "referral for consideration of alleged violation" was submitted which stated, in substance, that the automobile theft charge had been reduced to criminal trespass of a vehicle, and that petitioner was placed on probation for one year by a court in Arlington Heights, Illinois, on condition that he would submit himself to the Elgin State Hospital. The document alleged further that petitioner proceeded to Woodstock, Illinois, where he purchased a Cadillac automobile for $4,000 and gave the dealer a bad check for $1,000.

The "supplemental referral" also advised that petitioner had proceeded from Illinois to Elkhorn, Wisconsin, where he was arrested for disorderly conduct and a violation of the traffic laws, and that petitioner was sentenced to a thirty-day term of imprisonment. The Cadillac automobile was returned to the dealer.

On May 15, 1963, petitioner was arrested on a violator's warrant and committed to the county jail in Waukesha, Wisconsin. On May 22, 1963, petitioner was transferred to the federal penitentiary at Terre Haute, Indiana. On May 28, 1963, petitioner waived representation by counsel and the attendance of voluntary witnesses at the Parole Board hearing. On June 3, 1963, the institution conducted a preliminary interview. Petitioner admitted he was "technically" guilty of the alleged violations. The Board conducted a revocation hearing on July 2, 1963, and on August 7, 1963, petitioner's parole was revoked.

On August 23, 1963, petitioner filed a petition for a writ of habeas corpus alleging his rights were violated because he did not have a "preliminary interview" before being transferred to the federal prison at Terre Haute. On October 22, 1963, the District Court denied petitioner's application for a writ of habeas corpus. This appeal followed.

On the day the instant case was argued before us, two other appeals involving arrests for alleged parole violation were also argued. Each appeal was presented by separate counsel. Different fact situations are present in these three cases, but, undoubtedly, each of these appeals was inspired by the court decisions in Glenn v. Reed, 110 U.S.App.D.C. 85, 289 F.2d 462; Reed v. Butterworth, 111 U.S.App.D.C. 365, 297 F.2d 776, and especially Hyser v. Reed, 115 U.S.App. D.C. 254, en banc, 318 F.2d 225.

In this opinion, several references will be made to federal statutes authorizing parole, and to the rules and practices of the Board of Parole. These are applicable to all three appeals. They need not be separately stated in our opinions in the two other cases involving parole revocations, but will be incorporated therein by reference.

The United States Board of Parole was established by Congress. 18 U.S.C. §§ 4201–4210. A federal prisoner may be afforded an opportunity to serve part of the sentence imposed upon him outside of prison on parole. 18 U.S.C. §§ 4164– 4203. A violation of a condition of parole can lead to a revocation of parole. 18 U.S.C. §§ 4205, 4207.

Parolees may be classified in two groups: Mandatory releasees and parolees. When a prisoner has served his term less his good time credit, he is entitled to be released. 18 U.S.C. § 4163. There is no discretion in the Board to deny a release in such a case. However, for a period thereafter, equal to his good time allowance less 180 days, he is treated as though he were a parolee, and is subject to supervision of the Board. 18 U.S.C. § 4164.

A parolee gains his conditional freedom as a result of the exercise of discretion by the Board. After a certain period, a prisoner may apply for a parole. The Board may grant a parole when it is of the opinion "there is a reasonable probability that such prisoner will live and remain at liberty without violating the laws" and upon "such terms and conditions * * * as the Board may prescribe." 18 U.S.C. § 4203.

The statute (18 U.S.C. § 4207) provides that a prisoner retaken upon a warrant issued by the Board of Parole "shall be given an opportunity to appear before the Board * * *." The Court of Appeals of the District of Columbia has construed these words to permit parolees to be represented by counsel, Glenn v. Reed, supra, and to present voluntary witnesses, Reed v. Butterworth, supra.

In Hyser v. Reed, supra, the Court of Appeals, in effect, mandated the Board of Parole to provide certain procedural steps in retaking parolees who are accused of a violation of parole. One of the steps was that the Board conduct a "preliminary interview" with the parolee before he is transported to the federal prison. It may be of some significance that the court did not say the failure to provide the "preliminary interview" violated the parolee's constitutional rights or rendered the parole revocation invalid. However, the court did say at page 246 of 318 F.2d: "Balancing the array of competing considerations we are unwilling to hold that prisoners validly convicted, paroled and thereafter retaken should now be set at liberty for want of compliance with steps only now for the first time commanded."

In the light of the views of the Court of Appeals of the District of Columbia, the Board of Parole amended its rules on August 24, 1962, so that each parolee or mandatory release violator would be advised that he may, upon request, be represented by counsel and call voluntary witnesses having relevant and material information. 28 C.F.R. Sec. 2.41. After the Hyser decision, the Board, on October 5, 1963, again amended its rules to provide the parolee with a hearing prior to his transfer to a federal institution, if requested, and if the parolee has not been convicted of a crime while under community supervision. 28 C.F.R. Sec. 2.40.[1]

■ A violation of parole is not, in itself, a criminal offense. The parole revocation process is not a criminal prosecution. There is no right to a court trial on the issue of a revocation of parole. Wright v. Settle, 8 Cir., 293 F.2d 317.

The United States Supreme Court has not passed upon the questions here at issue. However, that Court, in Compagna v. Hiatt, 340 U.S. 880, 71 S.Ct. 192, 95 L.Ed. 639, did affirm the Court of Appeals, 5th Circuit, 178 F.2d 42. In that case, a member of the United States Board of Parole issued a parole violator warrant after attendant publicity and a Congressional investigation had been brought about by paroles granted to two prisoners. The District Court held the Board member had no reliable information as to parole violations by the prisoners. The Court of Appeals reversed on the ground that the District Court had no right to interfere with the proceedings of the Parole Board in the matter of revocation of parole. There was a vigorous dissenting opinion. Certiorari was granted and the Supreme Court affirmed by an equally divided court. As is customary in such a situation, there was no opinion by the Supreme Court.

■ The Supreme Court has, however, considered claims by probationers that they were entitled to "full dress" hearings by the District Court before probation could be revoked. In each instance the Supreme Court has rejected such a claim. Burns v. United States, 287 U.S. 216, 53 S.Ct. 154, 77 L.Ed. 266; Escoe v. Zerbst, 295 U.S. 490, 493, 55 S.Ct. 818, 79 L.Ed. 1566. We recognize there are dis-

---

1. It should be noted Richardson's parole was revoked approximately five months prior to the 1963 amendment. Further-more, he had been convicted of a crime during the period he was on parole.

tinguishing factors between probation and parole but, as stated in Hyser v. Reed, supra, 318 F.2d at page 236: "Congress, which is the source of both of these penological devices has given no indication that the revocation of parole should be more difficult or procedurally different than the revocation of probation."

Turning now to the claims of Jack Bertrand Richardson, Jr., he urges that the details of the procedure after arrest for parole violation as described in Hyser v. Reed, supra, were not followed. He points out that he was released from the Elgin State Hospital on February 15, 1963, and that the state court in Arlington Heights, Illinois, granted him probation on the condition that he re-submit himself to the Elgin State Hospital for observation within twenty-four hours. He asserts he was seeking a relative to accompany him as required by the rules, when he was arrested at Lake Geneva for a traffic charge.

Richardson admits he was fined $185 due to the incident at Lake Geneva, Wisconsin, and served a 30-day jail sentence rather than pay the fine. He admits that he was "technically" guilty of the offense.

Richardson argues that he was entitled to have a preliminary interview at or near the place where the alleged parole violations occurred, at which witnesses, both lay and medical, could have testified as to his mental and physical health at the time of the alleged parole violations. Richardson insists that the District Court erred in denying his petition for a writ of habeas corpus, and that he is entitled to a discharge from custody or, in the alternative, that the case should now be remanded to the District Court for a hearing.

 Revocation of parole hearings is not comparable to criminal prosecutions although a prisoner's privilege of remaining outside of prison walls may be revoked. Furthermore, it is well established that judicial review with respect to a finding of parole violation is narrow and limited.

On May 15, 1963, the Board's rules and regulations had not been amended to require a preliminary hearing. Under the rules as now amended, we believe that in fairness to a parolee, and in accordance with the rules of the Board, a preliminary hearing should be promptly held at a location at or near the place of the alleged violation of parole. However, in this case, we hold that petitioner's constitutional rights were not violated by the failure of the Board to hold such a hearing after petitioner had been arrested for parole violation.

William T. Fitzgerald, Esq., of Evansville, Indiana, was court-appointed counsel upon this appeal. We wish to thank Mr. Fitzgerald for his diligent and competent efforts upon behalf of the petitioner.

The District Court was correct in denying the petition for a writ of habeas corpus filed by petitioner herein.

Affirmed.